UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE M. SKINNER, | Case No. 5:19-01116 DMG (ADS) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| R. LEE, et al., | |
| Defendants. | |

This Report and Recommendation is submitted to the Honorable Dolly M. Gee, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.   **INTRODUCTION**

Plaintiff Jesse M. Skinner ("Plaintiff"), an federal inmate at the Federal Correctional Institution, McDowell ("FCI McDowell") proceeding pro se and *in forma pauperis* filed a civil rights complaint alleging a variety of civil rights violations and acts pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") for

events that occurred while Plaintiff was incarcerated at United States Penitentiary, Victorville ("USP Victorville") and at Federal Correctional Institution, Herlong ("FCI Herlong").  Through the screening process, Plaintiff has had multiple opportunities to state a claim upon which relief can be granted.  Plaintiff has continually failed to do so.  As discussed in more detail below, it is recommended that the case be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**II.     PROCERURAL AND FACTUAL HISTORY**

Plaintiff first filed a Civil Rights Complaint under multiple criminal statutes, RICO, 42 U.S.C. §§ 1985 and 1986, and <u>Bivens</u> for civil rights violations.  [Dkt. No. 1]; <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  Prior to the Court's statutorily required screening process, Plaintiff, of his own volition, filed a First Amended Complaint ("FAC").  [Dkt. No. 8].  The FAC alleged claims pursuant to 42 U.S.C. § 1983, 1985, and 1986, RICO, and the Universal Declaration of Human Rights ratified by the General Assembly of the United Nations.  [<u>Id.</u>].  During the statutorily mandated screening, the Court issued an order dismissing the FAC with leave to amend, finding that Plaintiff failed to comply with Federal Rule of Civil Procedure 8(a)(2) ("Rule 8").  <u>See</u> 28 U.S.C. § 1915A(a)-(b)(1); [Dkt. No. 12].  The Court found the FAC failed to provide a short and plain statement of Plaintiff's claims, but rather was overly long, unwieldy, combined dozens of pages of narrative that blended multiple potential causes of action with descriptions of events, and yet failed to identify any specific claim under a specific statute or constitutional amendment.  [<u>Id.</u> at p. 2[1]].

---

[1] All page references shall refer to CM/ECF pagination.

In response to the Court's caution that a lengthy complaint can violate Rule 8 if a defendant would have difficulty responding to the complaint, see Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011), Plaintiff next filed a Second Amended Complaint ("SAC") consisting of 111 pages.  [Dkt. No. 16].  Plaintiff followed up with a supplemental eighty-two (82) page "RICO Statement."  [Dkt. No. 17].  The RICO Statement largely reasserts factual allegations from the SAC, with more narrative by Plaintiff, along with citations to irrelevant case law and a number of attachments with little to no context.  [Id.].  To the best of its ability, the Court identified fourteen causes of action during screening of the SAC and provided what it believed to be relevant pleading standards.  However, the SAC was again dismissed for failure to comply with Rule 8, and Plaintiff was once again cautioned that unnecessarily lengthy complaints violate Rule 8.  [Dkt. No. 19].

Despite the prior warnings from the Court, Plaintiff filed an even longer Third Amended Complaint ("TAC") [Dkt. No. 22].[2]  Not only does the 117-page TAC largely restate and fail to remedy the deficiencies previously identified by the Court, it also adds several pages of increasingly aggressive personal attacks on the Court.  [Dkt. No. 22, pp. 113-17].  Among other things, Plaintiff claims the courts are in "collusion" with officers of the law "to create as much mayhem and crime as possible" in order to preserve their own "job security."  [Id.].  Plaintiff concludes with how this proceeding is "a pathetic disgrace" but asserts that he "know[s] the TRUTH," (original emphasis) and ends with "[g]ive me liberty or give me death!"  [Id. at p. 117].

---

[2] Plaintiff also filed a "Motion to Supplement page 11" attaching the correct page 11 of the TAC, and requesting that the correct page be substituted in. [Dkt. No. 23].  That Motion is **GRANTED**.

1   The TAC is currently before the Court for further screening pursuant to 28 U.S.C.

2   § 1915A(a)-(b)(1).  Due to the fact that Plaintiff has repeatedly been given the

3   opportunity to state a claim upon which relief can be granted, but has failed to do so, the

4   TAC should be dismissed without leave to amend.

5   **III.  STANDARD OF REVIEW**

6   The Court is required to screen <u>pro se</u> complaints brought by prisoners and

7   dismiss claims that, among other things, are frivolous, malicious, or fail to state a claim

8   upon which relief can be granted.  28 U.S.C. § 1915A(a)-(b)(1).  "The standard for

9   determining whether a plaintiff has failed to state a claim upon which relief can be

10  granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure

11  12(b)(6) standard for failure to state a claim."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1112

12  (9th Cir. 2012); <u>see also</u> <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1121 (9th Cir. 2012)

13  (screening "incorporates the familiar standard applied in the context of failure to state a

14  claim under Federal Rule of Civil Procedure 12(b)(6)").

15  Accordingly, a complaint must "contain sufficient factual matter, accepted as

16  true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S.

17  662, 678 (2009) (internal quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1121.  In

18  determining whether Plaintiff has stated a claim, the Court accepts as true the factual

19  allegations contained in the Complaint and views all inferences in the light most

20  favorable to Plaintiff.  <u>See</u> <u>Hamilton v. Brown</u>, 630 F.3d 889, 892-93 (9th Cir. 2011).

21  However, courts "are not bound to accept as true a legal conclusion couched as a factual

22  allegation."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The Court

23  construes the Complaint liberally because Plaintiff is proceeding <u>pro se</u>.  <u>Barrett v.</u>

24  <u>Belleque</u>, 544 F.3d 1060, 1061-62 (9th Cir. 2008) (per curiam).  Nonetheless,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  The "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. Id.; see also Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (discussing the plausibility standard set forth in Twombly and Iqbal).

In addition, a federal court has an independent duty to assess whether federal subject matter jurisdiction exists, whether or not the issue is raised by a party.  See United Investors Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004) (stating that "the district court had a duty to establish subject matter jurisdiction over the removed action sua sponte").  Accordingly, a court must also sua sponte dismiss a case if, at any time, it determines that it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).

## IV.   ANALYSIS

### A.   Failure to Comply with Rule 8

Like the FAC and SAC, the TAC must be dismissed for failure to comply with Rule 8.  Rule 8 requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555.  Rule 8(d)(1) instructs that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  Lengthy complaints violate Rule 8 if a defendant would have difficulty responding to the complaint.  Cafasso, 637 F.3d at 1059.

The TAC is anything but "short and plain" or "simple, concise, and direct."  See Twombly, 550 U.S. at 555; Fed. R. Civ. P. 8(d)(1).  The 117-page TAC contains forty-seven causes of action brought against eighteen different defendants located at two

different federal penitentiaries and one administrative office for a series of actions and

inactions occurring over several days between mid-September and late November 2017.

Although each claim is labeled, the facts provided are jumbled, combine multiple causes

of action with multiple defendants, and consist of circular reasoning.  For example,

Claim VI against Captain John Doe Sr. alleges Captain Doe conspired to violate

Plaintiff's First Amendment rights by

> knowingly and willfully allow[ing] [Plaintiff] to return to the hostile
> environment of Unit 1B so defendant Lee could further retaliate against me
> with more intimidation and threatening actions to corruptly persuade me
> to not file a grievance against them, by approaching me from behind in a
> threatening manner while I was on the computer, to try to coax me into a
> confrontation so that I may react to Lee's aggression, so they could
> legitimately have a reason to me in [Special Housing Unit], so I would not
> have direct access to the grievance forms in the counselor's office, knowing
> I was not a threat to the institution, and knowing the [Special Housing Unit]
> would adversely affect me from timely filing ... this lawsuit.

[Dkt. No. 22, p. 19].  In short, by standing behind Plaintiff on one occasion, Plaintiff

alleges Captain Doe entered into a grand conspiracy to prevent Plaintiff from becoming

a witness in the case he intended to bring (the present action) against Captain Doe, for

the crime of retaliating by standing behind him.  The other 116 pages of the TAC are

similarly full of difficult to follow narrative and consist of prolix allegations and must be

dismissed.  See McHenry v. Renne, 84 F.3d 1172, 1177-80 (9th Cir. 1996) (upholding a

Rule 8(a) dismissal of a complaint that was "argumentative, prolix, replete with

redundancy, and largely irrelevant")

     Not only are the facts of the TAC confusing, redundant, and verbose, but almost

entirely conclusory.  The TAC asks the Court to make the inference that every

interaction and lack of interaction with federal prison staff were part of a concerted

effort across multiple federal penitentiaries to keep Plaintiff from filing grievances to

prevent the filing of this action.  For example, Plaintiff alleges defendant Mary Mitchell "knowingly and willfully" entered into the conspiracy with the other defendants, despite being in an entirely different office and location, to "intentionally retaliate against [Plaintiff]" by "purposely failing to respond to my grievance," "knowing" that a failure to respond would prevent Plaintiff from filing the "instant lawsuit."  [Dkt. No. 22, p. 99]. Although the TAC identifies a number of buzzwords, it takes a lack of response to a grievance and runs with it to conclude defendant Mitchell knew of and intended to enter into the conspiracy with the goal of keeping Plaintiff from filing the immediate action. No facts are pled to support the jump from a single lack of action to conspiratorial intent.  The TAC makes similar conclusions throughout the complaint, providing further grounds for dismissal under Rule 8.  See Hatch v. Reliance Ins. Co., 758 F.2d 409, 415 (9th Cir. 1985) (upholding a Rule 8(a) dismissal of a lengthy complaint that was "confusing and conclusory"); Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 674 (9th Cir. 1981) (holding that Rule 8(a) is violated when a complaint is excessively "verbose, confusing and almost entirely conclusory").  Accordingly, Plaintiff fails to comply with Rule 8 and the TAC must be dismissed.

### B.     Failure to State a *Bivens* Claim

Even if the TAC complied with Rule 8, it still fails to state any claim upon which relief can be granted.  The claims in the TAC may be broken down into two categories: Bivens claims and RICO claims.  The Bivens claims may be broken further down into three categories: Bivens for retaliation, excessive force, and conspiracy to violate civil rights.  Plaintiff fails to state any claim under Bivens.

This action is brought against correctional officers and other correctional employees, all alleged to be federal employees.  Civil rights actions against federal

employees proceed under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  Accordingly, although the box for "42 U.S.C § 1983" is checked under "civil rights complaint pursuant to" on page one of the TAC, all civil rights claims in this action are brought under <u>Bivens</u> alone.  <u>See</u> [Dkt. No. 22, p. 1]; <u>Ibrahim v. Dep't of Homeland Sec.</u>, 538 F.3d 1250, 1257 (9th Cir. 2008) (finding that Section 1983 only provides a remedy against persons acting under color of state law, not federal law).  As such, even though the TAC only provides the relevant constitutional amendment for which the civil rights claims are brought, the Court appropriately construes these as <u>Bivens</u> claims.

<u>Bivens</u> actions have only been recognized in three circumstances: <u>Bivens</u>, 403 U.S. 388 (1971) (Fourth Amendment warrantless search/arrest without probable cause); <u>Davis v. Passman</u>, 442 U.S. 228 (1979) (Fifth Amendment federal employee gender discrimination unlawful termination); <u>Carlson v. Green</u>, 446 U.S. 14 (1980) (Eighth Amendment deliberate indifference to serious medical need).  The Supreme Court of the United States has made clear that "expanding the <u>Bivens</u> remedy is now a disfavored judicial activity," and it has therefore "consistently refused to extend <u>Bivens</u> to any new context or new category of defendants."  <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1857 (2017). When determining the appropriateness of extending a Bivens remedy, the Court conducts a two-part analysis, asking (1) whether the claim arises in a new context; and (2) whether special factors counsel against implying a damages remedy.  <u>Abbasi</u>, 137 S. Ct. at 1849.  Here, Plaintiff asserts <u>Bivens</u> claims for retaliation, excessive force, and conspiracy.  The Supreme Court has not extended a <u>Bivens</u> remedy for any of those three categories.

### 1.    First Amendment Retaliation

The Supreme Court has never held that <u>Bivens</u> extends to First Amendment claims.  <u>See</u> <u>Reichle v. Howards</u>, 566 U.S. 658, 663 n.4 (2012) ("[w]e have never held that Bivens extends to First Amendment claims.").  The Ninth Circuit recently declined to recognize a <u>Bivens</u> remedy in a similar situation where a federal inmate alleged retaliation by prison officials in response to filing grievances.  <u>Buenrostro v. Fajardo</u>, No. 18-15488, 770 F. App'x 807, 808 (9th Cir. May 22, 2019).  It is clear Plaintiff cannot state a <u>Bivens</u> claim for retaliation and further leave to amend would be futile.  Claims II, III, XII, XIII, XV, XXI, XXXI, XXV, XXXIII, and XLII should be dismissed.

### 2.    Eighth Amendment Excessive Force

Although "[t]he Supreme Court has not expressly approved of an implied damages remedy under <u>Bivens</u> for Eighth Amendment excessive force," <u>McLean v. Gutierrez</u>, No. 15-0275, 2017 U.S .Dist. LEXIS 214750, 2017 WL 6887309, at *18 (C.D. Cal. Sept. 28, 2017), some courts have extended a <u>Bivens</u> remedy for excessive force claims.  <u>See, e.g.</u>, <u>Reid v. United States</u>, 825 Fed. App'x 442, 444-45 (9th Cir. 2020); <u>Williams v. Baker</u>, 487 F. Supp. 3d 918, 930 (E.D. Cal. 2020).  It is not necessary for this Court to weigh in on the matter because, even if a <u>Bivens</u> remedy exists, Plaintiff fails to state a claim for excessive force.

The use of excessive force by a prison official against an inmate is a violation of the Eighth Amendment.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).  However, the force used must be more than <em>de minimis</em>, as "[a]fter incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986).  However, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of

action." <u>Hudson</u>, 503 U.S. at 9 (citing <u>Johnson v. Glick</u>, 481 F.2d, 1028, 1033 (2d Cir. 1973) ("[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

The relevant inquiry to determine whether the force used was an "unnecessary and wanton infliction of pain" asks whether the use of force was applied "maliciously and sadistically" to cause harm rather than as a "good faith effort to maintain or restore discipline." <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 40 (2010) (per curiam).  This inquiry is divided into two parts: (1) a "subjective" inquiry into whether prison staff acted with a "sufficiently culpable state of mind"; and (2) an "objective" component, that asks whether the "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." <u>Hudson</u>, 503 U.S. at 8.

The objective component is "contextual and responsive to 'contemporary standards of decency.'" <u>Hudson</u>, 503 U.S. at 8 (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." <u>Hudson</u>, 503 U.S. at 9. However, this component also recognizes that prison officials "confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." <u>Id.</u> at 4-6.  "Corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" <u>Id.</u> (quoting <u>Whitley</u>, 475 U.S. at 319-20).  In addition, although "serious injury" is not required, *de minimis* force is not actionable so long as it is not "of a sort 'repugnant to the conscience of mankind.'" <u>Bearchild v. Cobban</u>, 947 F.3d 1130, 1141 (9th Cir. 2020) (quoting <u>Hudson</u>, 503 U.S. at 9-10).  Accordingly, a prisoner asserting an Eighth Amendment claim "must objectively

show that he was deprived of something 'sufficiently serious.'" Id. (citing Watison, 668 F.3d at 1112). What constitutes a sufficiently serious deprivation "may evolve as 'the basic mores of society change.'" Id. (quoting Kennedy v. Louisiana, 554 U.S. 407, 419, (2008)).

The subjective component asks whether a defendant had a "sufficiently culpable state of mind" to act "maliciously and sadistically to cause harm." See Hudson, 503 U.S. at 8. Factors that bear on the prison official's state of mind include: "(1) the extent of the injury suffered by the inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013) (quoting Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003)). But prison staff should be "accorded wide-ranging deference" in weighing the merits of an excessive force claim when the force used relates to a legitimate interest in maintaining security and order. Wood v. Beauclair, 692 F.3d 1041, 1050 (9th Cir. 2012) (quoting Hudson, 503 U.S. at 6); see also Whitley, 475 U.S. at 321 ("equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them").

### a.      Claim I

Plaintiff asserts an excessive force claim against defendant Lee. [Dkt. No. 22, p. 9]. Plaintiff asserts defendant Lee used his knee to hold Plaintiff's hand in the food slot in the cell, while he laughed, which resulted in a "1 centimeter cut." [Id.]. Despite the Court's attempts to provide the excessive force pleading requirements and explain the deficiencies with Plaintiff's claims, Plaintiff still fails to provide sufficient factual

allegations to suggest a malicious and sadistic use of harm to cause pain.  See [Dkt. No. 19, pp. 4-6].  The alleged "1 centimeter cut," roughly the size of a papercut, falls short of a "sufficiently serious" harm.

Plaintiff was advised of this shortcoming in the Order Dismissing SAC, but has pled no facts reflecting something more serious occurred, and failed to provide pertinent factual information regarding the circumstances of the incident, such as the need for application of force or the threat reasonably perceived.  Plaintiff instead suggests that this Court "condone[s]" defendant Lee's actions.  [Dkt. No. 22, p. 113].  Every "malevolent touch" by a prison official does not give rise to a cause of action for excessive force.  See Hudson, 503 U.S. at 9-10.  Plaintiff does not plead facts that suggest the use of force was more than *de minimis* or of the sort "repugnant to the conscience of mankind."  See Bearchild, 947 F.3d at 1141.  As such, Plaintiff fails to state an excessive force claim against defendant Lee.

In addition, it is clear Plaintiff either has no intention or has no ability to amend this claim to sufficiently state a claim.  Claim I should be dismissed without leave to amend.

### b.   Claim VIII

Claim VIII asserts excessive force against defendant Lt. John Doe.  Plaintiff asserts defendant Lt. Doe, while escorting Plaintiff to the Special Housing Unit ("SHU"), grabbed Plaintiff's arm, spun him around to be against the wall, held the back of Plaintiff's shirt, and kicked Plaintiff's feet apart.  [Dkt. No. 22, p. 23].  Plaintiff asserts he experienced "physical pain and mental anguish."  [Id.].  Plaintiff was advised of this claim's deficiencies.  See [Dkt. No. 19, p. 5].  Yet Plaintiff still fails to plead facts that suggest this was more than a *de minimis* use of force.  To the contrary, Plaintiff's own

allegations suggest this was not excessive force, but a mere break in "policy procedure protocol" and was "unprofessional." [Id.].  An "unprofessional" touching where an inmate was being escorted to the Special Housing Unit and an officer may well have had good reason to conduct a pat down search does not indicate the use of force was more than *de minimis*.  Plaintiff pleads no facts regarding extent of the injury suffered and only refers broadly to vague "physical pain and mental anguish." [Id.].  In addition, Plaintiff pleads no facts regarding the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, or any efforts made to temper the severity of a forceful response. See Furnace, 705 F.3d at 1028.  Instead, Plaintiff merely provides the conclusion that Lt. Doe's actions were "unwarranted" and "without any justifiable reasons for doing so." [Id.].  The Court is not required to accept conclusory allegations as true.  See Twombly, 550 U.S. at 555.  Accordingly, without the conclusory allegations and buzzwords, this claim boils down to an "unprofessional" touching that occurred while Plaintiff was being escorted to SHU.  As such, Plaintiff fails to provide sufficient factual allegation that more than *de minimis* force was used and fails to state a claim for excessive force.  Claim VIII should be dismissed.

c.      Claim XXII

Plaintiff asserts that defendant T. Collier entered Plaintiff's cell, pushed Plaintiff against the wall, and jabbed his finger in Plaintiff's face.  [Dkt. No. 22, p. 51].  Plaintiff asserts he incurred a bruise and "mental anguish." [Id.].  Despite being warned of the deficiencies with this claim, again, see [Dkt. No. 19, pp. 5-6], Plaintiff fails to plead any facts regarding need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, or any

efforts made to temper the severity of a forceful response, and merely provides conclusory allegations that the use of force was in "a malicious and sadistic manner" and with "no justifiable reason."  [Id.]; see Furnace, 705 F.3d at 1028.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," which is the case regarding this claim.  Iqbal, 556 U.S. at 678.  While identifying buzzwords, Plaintiff's factual allegations are sparse, recalling nothing more than an angry gesture and single bruise.  Plaintiff's allegations do not evoke a use of force that is "repugnant to the conscience of mankind," but rather an uncouth contact.  See Bearchild, 947 F.3d at 1141.  Once again, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  Johnson, 481 F.2d at 1033.  That is precisely what Plaintiff complains of here, and accordingly fails to state a claim.  Claim XXII should be dismissed.

### d.    Claim XXVII

Plaintiff asserts defendant S. Freeman used excessive force when he approached Plaintiff's cell and, through the food slot, yelled that Plaintiff was a "snitch" and that if "[defendant Freeman] sees anything written about him he would figure out a way to make [Plaintiff] regret it," and threatened to "beat [Plaintiff's] brains out."  [Dkt. No. 22, p. 61].  Plaintiff asserts defendant Freeman also took off his boots and safety vest.  [Id.].  Threats alone are generally insufficient to state a claim for violation of the Eighth Amendment.  See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996); see also Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) ("it trivializes the eighth amendment to believe a threat constitutes a constitutional wrong").  Although it may have been a foul threat, a threat to commit an act that would violate a plaintiff's constitutional rights is not equivalent to doing the act itself.  See Gaut, 810 F.2d at 925.  As such, threatening

excessive force, without more, does not state a claim for excessive force.  Therefore, Plaintiff fails to state a claim.  Claim XXVII should be dismissed.

> e.  Claim XXX

Plaintiff brings a second excessive force claim against defendant T. Collier asserting that defendant Collier made a throat slashing gesture and later whispered through Plaintiff's cell door that if Plaintiff "[said] one word something bad would happen."  [Dkt. No. 22, p. 67].  Plaintiff only alleges verbal threats by defendant Collier in this instance.  As discussed above, threats alone are generally insufficient to state a claim for violation of the Eighth Amendment.  See Keenan, 83 F.3d at 1092; see also Gaut, 810 F.2d at 925.  As such, Plaintiff's allegation that defendant Collier verbally threatened him, without more, is insufficient to demonstrate an Eighth Amendment violation.  Consequently, Plaintiff fails to state a claim.  Claim XXX should be dismissed.

Plaintiff fails to state any claim for excessive force pursuant to Bivens.  All excessive force claims, Claims I, VIII, XXII, XXVII, and XXX, should be dismissed.

**3.  Conspiracy**

Claims for conspiracy to violate civil rights do not fall within one of the three circumstances where a Bivens remedy has been recognized.  Again, it is not necessary for this Court to weigh in on whether Bivens should be extended in this context because, even if a Bivens remedy were available, Plaintiff fails to plead the underlying claim.  To plead a claim for conspiracy to violate civil rights, a plaintiff must allege "an agreement or meeting of the minds to violate constitutional rights."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)).  A plaintiff must also allege an actual deprivation of constitutional rights.  Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting

Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  Franklin, 312 F.3d at 441.  Conclusory allegations of conspiracy are not sufficient to support a claim.  See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980); see also Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) (plaintiff must allege specific facts to support claim of conspiracy to violate constitutional rights); Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 929 (9th Cir. 2004) ("[t]o state a claim for conspiracy to violate constitutional rights, the plaintiff must state specific facts to support the existence of the claimed conspiracy.") (internal citations omitted).

Plaintiff fails to state any factual allegations sufficient to show a meeting of the minds between all defendants to violate Plaintiff's civil rights.  See Franklin, 312 F.3d at 441.  Each of the conspiracy claims contains broad allegations that are entirely conclusory, such as defendants "knowingly and willfully conspired and agreed" with other defendants to violate Plaintiff's civil rights.  See, e.g., [Dkt. No. 22, p. 19].  Plaintiff alleges no specific facts showing an agreement or meeting of the minds.  Conclusory allegations are insufficient to support a claim for conspiracy.  See Aldabe, 616 F.2d at 1092; Olsen, 363 F.3d at 929.

Furthermore, even if the allegations in the TAC were sufficient to allege an agreement or meeting of the minds to violate Plaintiff's constitutional rights, these claims would still fail because, as discussed above, Plaintiff has not pled sufficient facts to establish that any of the defendants have violated Plaintiff's constitutional rights.  To state a claim for conspiracy, an actual deprivation of constitutional rights must be pled.  See Hart, 450 F.3d at 1071.

1    Therefore, Plaintiff fails to state a claim for conspiracy to violate civil rights

2    against any of the defendants.  Claims VI, IX, XVI, XVIII, XXIII, XL, XLV, and XLVI

3    should be dismissed.

4    **C.    Failure to State a RICO Claim**

5    Plaintiff's remaining claims are all stated as "civil RICO" or "civil RICO

6    conspiracy."  The TAC's general RICO and RICO conspiracy allegation is that all of the

7    named defendants were engaged in racketeering activity by conspiring with each other

8    through disparate acts meant to keep Plaintiff from filing grievances to prevent suits

9    against them.  See generally [Dkt. No. 19].  Plaintiff fails to state a claim for civil RICO or

10   civil RICO conspiracy because he lacks standing to bring these claims and likewise fails

11   to state a claim.

12   Courts have a duty to raise issues of standing sua sponte as it is a threshold

13   jurisdictional issue.  Biggs v. Best, Best & Krieger, 189 F.3d 989, 998 n.7 (9th Cir. 1999);

14   D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1035 (9th Cir. 2008).

15   Standing stems from Article III of the United States Constitution, which requires that

16   federal courts adjudicate only "cases and controversies."  United Food and Commercial

17   Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 551 (1996).  Article III

18   standing is an "indispensable part" of a plaintiff's case.  Lujan v. Defenders of Wildlife,

19   504 U.S. 555, 561 (1992).

20   The constitutional standing requirements of Article III are well established and

21   require proof of three elements: (1) injury in fact; (2) causal connection between the

22   injury and the conduct; and (3) likely to be redressed by a favorable judicial decision.

23   See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016); Lujan, 504 U.S. at 560-61.  At

24   the pleading stage, a plaintiff need only set forth "general factual allegations of injury

1  resulting from the defendant's conduct." Lujan, 504 U.S. at 561.  However, "RICO

2  standing is a more rigorous matter than standing under Article III." Denney v. Deutsche

3  Bank AG, 443 F.3d 253, 266 (2d Cir. 2006).

4          As to the first requirement, injury in fact, the Supreme Court in Sedima v. Imrex

5  Co., 473 U.S. 479, 105 S. Ct. 3275 (1985) found that to allege a RICO claim "the plaintiff

6  only has standing if, and can only recover to the extent that, he has been injured in his

7  business or property by the conduct constituting the violation." Sedima, 473 U.S. at 496

8  (superseded by statute on other grounds).  A showing of such injury requires proof of

9  "concrete financial loss," and not "mere injury to a valuable intangible property

10  interest." Oscar v. University Students Co-Operative Ass'n, 965 F.2d 783, 785 (9th Cir.

11  1992) (en banc).  Personal, i.e. physical, injuries, including emotional distress, do not

12  constitute a business or property injury.  See, e.g., Oscar, 965 F.2d at 785 (9th Cir. 1992)

13  ("personal injuries are not compensable under RICO"); Berg v. First State Ins. Co., 915

14  F.2d 460, 464 (9th Cir. 1990) (holding that under RICO "as a matter of law, personal

15  injury, including emotional distress, is not compensable"); Grogan v. Platt, 835 F.2d

16  844, 847 (11th Cir. 1988) (Eleventh Circuit decision cited with approval by Ninth Circuit

17  in Berg, 915 F.2d at 464, holding "the ordinary meaning of the phrase 'injured in his

18  business or property' excludes personal injuries").  "[C]ivil RICO injuries are, by the

19  terms of the statute itself, economic losses of one kind or another." Bascuñán v. Elsaca,

20  874 F.3d 806, 817 (2d Cir. 2017).

21          Plaintiff cannot fulfill the injury in fact requirement of standing because he does

22  not allege a business or property injury caused by the alleged racketeering activity.  The

23  TAC identifies a number of physical injuries suffered as a result of the defendants'

24  conduct, including a one-centimeter laceration on his hand and bruising.  See, e.g., [Dkt.

18

No. 22, pp. 9, 49, 51, 87].  The TAC also identifies emotional distress as an injury, alleging Plaintiff suffered fear of harm.  See, e.g., [id. at pp. 9, 52].  Therefore, Plaintiff solely alleges personal injuries.  It is well settled to plead a civil RICO claim, there must be economic injury.  There is nothing on the face of the four complaints filed by Plaintiff in this action that suggests economic injury ever occurred or could be pled.  As such, Plaintiff lacks standing to bring any civil RICO claim, including civil RICO conspiracy, and accordingly fails to state a RICO claim.

Similarly, to adequately plead a RICO claim explicitly requires a plaintiff to demonstrate "injury to business or property" as a necessary element.  See Diaz v. Gates, 380 F.3d 480, 483 (9th Cir. 2004) (en banc) (upholding dismissal of RICO claims for failure to allege injury to business or property); see also Fireman's Fund Ins. Co. v. Stites, 258 F.3d 1016, 1021 (9th Cir. 2001) (to prevail on a civil RICO claim, a plaintiff must establish "that the defendant engaged in: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity . . . and, in addition, show that the defendant caused injury to his business or property") (citations omitted).  As discussed above, the TAC fails to plead this necessary element, and nothing indicates that further leave to amend would remedy this deficiency.  Plaintiff's narrative of unfair treatment by federal prison staff, occasionally resulting in mild physical and emotional injury, does not plead a civil RICO or civil RICO conspiracy claim.  As such, Claims IV, V, VII, X, XI, XIV, XVII, XIX, XX, XXIV, XXVI, XXVIII, XXIX, XXXII, XXXIV, XXXVI, XXXV, XXXVII, XXXVIII, XXXIX, XLI, XLIII, XLIV, XLVII should be dismissed.

**V.     LEAVE TO AMEND**

If the Court finds that a complaint fails to state a claim, the Court has discretion to dismiss with or without leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1126-30

1    (9th Cir. 2000) (en banc).  In the Ninth Circuit, courts should grant leave to amend if it

2    appears possible that the defects in the complaint could be corrected.  See Lopez, 203

3    F.3d at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("[a]

4    pro se litigant must be given leave to amend his or her complaint, and some notice of its

5    deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not

6    be cured by amendment.").  However, if, after careful consideration, it is clear that

7    amendment cannot cure a complaint, the Court may dismiss without leave to amend.

8    Cato, 70 F.3d at 1105-06 (affirming district court's dismissal of the complaint with

9    prejudice pursuant to 28 U.S.C. § 1915(d)).  Further, "[t]he district court's discretion to

10   deny leave to amend is particularly broad where plaintiff has previously amended the

11   complaint." Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

12          Plaintiff should not be granted to leave to amend.  As detailed above, Plaintiff has

13   had multiple opportunities to amend and has continually failed to cure the identified

14   deficiencies.  To the best of its ability, the Court has advised Plaintiff of pleading

15   deficiencies in the complaints and provided Plaintiff with relevant pleading standards.

16   Despite this information, Plaintiff fails to state any claim upon which relief can be

17   granted and continues to assert claims that the Court warned were deficient.

18   Notwithstanding the multiple opportunities to amend, Plaintiff has failed time and

19   again to state a single claim upon which relief can be granted.  It is clear further leave to

20   amend would be futile.

21          Furthermore, Plaintiff has filed longer and longer complaints with each

22   opportunity to amend, so the trend suggests Plaintiff would only continue to file longer

23   complaints, providing more redundant and irrelevant conjecture without fixing the

24   deficiencies.  Leave to amend may be denied for a needlessly long complaint.  See

20

Cafasso, 637 F.3d at 1059 (affirming district court's dismissal of excessively long and prolix complaint without leave to amend); see also 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2010) (Rule 8(a) has "been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.").  In addition, an overly long pleading prejudices the opposing party and may show bad faith of the movant, both of which are valid grounds to deny leave to amend.  Cafasso, 637 F.3d at 1059.  Like the plaintiff in Cafasso, here, Plaintiff would "burden [his] adversary with the onerous task of combing through [an excessively long complaint] just to prepare an answer that admits or denies such allegations and to determine what claims and allegations must be defended or otherwise litigated."  Id. (referring to McHenry, 84 F.3d at 1178).  "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges," who have to "waste[] half a day in chambers preparing the 'short and plain statement'" when "[o]ur district courts are busy enough without having to penetrate a tome . . . to discern a plaintiff's claims and allegations."  Id. (citing in part McHenry, 84 F.3d at 1179-80).  That is precisely the case here.  As such, it is clear that further leave to amend would be futile and may prejudice the opposing parties and show bad faith of the movant.  No further leave to amend should be granted, and this action should be dismissed with prejudice for failure to state a claim.

///

///

///

## VI.    **<u>CONCLUSION</u>**

For the foregoing reasons, it is recommended that the District Judge issue an Order (1) accepting this Report and Recommendation; (2) dismissing the Third Amended Complaint with prejudice for failure to state a claim upon which relief can be granted; and (3) directing that Judgment be entered accordingly.

**IT IS SO ORDERED.**


Dated:  May 20, 2021

_____/s/ Autumn D. Spaeth_____
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge
